UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEAUTY SOLUTIONS, LTD.,<br><br>                              Plaintiff,<br><br>          -against-<br><br>KIRA LABS, INC., FINE HEALTH &<br>BEAUTY LLC, AND DAVID H. ROSEN<br><br>                              Defendant. | Civil Action No. 1:16-cv-921<br><br>**COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff, BEAUTY SOLUTIONS, LTD. ("Plaintiff"), by and through its undersigned attorneys Meister Seelig & Fein LLP, for its Complaint against Defendants, Kira Labs, Inc. ("Kira Labs"), Fine Health and Beauty LLC ("FHB"), and David H. Rosen ("Rosen") (each individually a "Defendant" and collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      In this action, Plaintiff seeks injunctive relief, lost profits, damages, costs, and attorneys' fees for Defendants' acts of willful trademark infringement, trade dress infringement, false designation of origin, false descriptions, unfair competition, deceptive trade practices, false advertising, and intent to deceive under the Lanham Act and common law and statutes of the State of New York.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction of this action pursuant to 15 U.S.C. §1121 (actions arising under the Lanham Act), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1332 (diversity of citizenship), 28 U.S.C. §1338 (a) (acts of Congress relating to trademarks), 28

U.S.C. §1338 (b) (pendant unfair competition claims) and 28 U.S.C. §1367 (supplemental jurisdiction over state claims).

3.     Upon information and belief, Defendants regularly and systematically contract to supply goods and transact business in New York and within this judicial district, and the acts of Defendants complained of in this Complaint, including, without limitation, the sale of Defendants' infringing goods, have been and continue to be committed, and have caused harm to Plaintiff within this judicial district, and thus this Court has jurisdiction over Defendants.

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391.

## THE PARTIES

5.     Plaintiff is a domestic business corporation duly organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

6.     Upon information and belief, Defendant Kira Labs is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 2122 Blount Road, Pompano Beach, Florida.

7.     Upon information and belief, Defendant FHB is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 2122 Blount Road, Pompano Beach, Florida.

8.     Upon information and belief, Defendant Rosen resides at 7628 Stockton Terrace, Boca Raton, Florida, is the President and CEO of Kira Labs, and owns and/or operates a number of business entities which are or purport to be involved in the same or similar business as Kira Labs, including Defendant FHB as well as Naturalskinshop, Inc., Mayts, Inc., and Smashyn Inc. (Kira Labs, FHB, Naturalskinshop, Mayts, and Smashyn being referred to herein collectively as the "Rosen Entities").

## GENERAL ALLEGATIONS

**Plaintiff's Trade Dress and Trademark**

9.      Plaintiff is in the business of, *inter alia*, researching the beauty marketplace to develop original brands and products, and producing, manufacturing, distributing, marketing, and selling skincare products.

10.     Among Plaintiff's products is a line of retinol-containing skin care products.

11.     Included in the line of retinol-containing skin care products including without limitation a day cream, a night cream, a facial serum, and ten other products ("Plaintiff's Products").

12.     Plaintiff is the owner of United States Trademark Registration No. 4,458,032 for the composite mark which is comprised of the word "RETINOL" placed in a shaded maroon/burgundy rectangle with white lettering in all capitals in a block font with a white horizontal line running inside and across the bottom of the rectangle (the "Trademark").  A copy of the Trademark is attached as Exhibit A.

13.     In addition, Plaintiff's Products are sold in distinctive packaging consisting of distinctive retail boxes and primary components that prominently feature the use of its Trademark maroon/burgundy colored rectangular bar extending horizontally along the top of contrasting white or other light colored packaging and having words in white font including the prominent use of the word "RETINOL" within the colored bar in all capitals in a block font.  The overall visual impression created by the packaging is the Product's trade dress (the "Trade Dress").  A copy of sample products illustrating Plaintiff's Trade Dress is attached as Exhibit B.

14.    Plaintiff used the Trademark and Trade Dress in interstate commerce prior to any of the acts of Defendants complained of herein, and the Trademark and Trade Dress are currently in such use.

15.    Plaintiff's use of the Trademark and Trade Dress have been open, notorious, and continuous since the date of first use, a time prior to any of the acts of Defendants complained of herein.

16.    Plaintiff has vigorously defended its Trademark and/or Trade Dress, including but not limited to at least two occasions in which Plaintiff forced third parties to agree to change their packaging without resorting to litigation and at least two instances in which Plaintiff brought an action to enforce its rights.

17.    One such action was the case of *Beauty Solutions, Ltd. v. CRE L.L.C.*, 12 civ 8498 (S.D.N.Y.), which resulted in the defendant in that action changing its packaging, as indicated in the before and after pictures attached hereto as the first and second pages, respectively, in Exhibit C.

18.    Another such action was the case of *Beauty Solutions, Ltd. v. Concept Laboratories, Inc.*, 14 civ 01703 (S.D.N.Y.), which again resulted in the defendant in that action changing its packaging, as indicated in the before and after pictures attached hereto as the first and second pages, respectively, in Exhibit D.

**Plaintiff's Trademark and Trade Dress are inherently distinctive**

19.    The Trademark and Trade Dress, including the shape, color choices, font, and arrangement of elements on the packaging, were selected from an essentially limitless number of possibilities.

20.     The Trademark and Trade Dress are not functional and the specific font, maroon/burgundy and white color scheme, and arrangement of elements on the packaging chosen by Plaintiff have no significance in the industry.

21.     Other manufacturers of competitive products do not use the combination of elements of the Trademark and Trade Dress as described herein in their packaging for skin care products containing retinol, as shown by examples attached hereto as Exhibit E, including the last page of Exhibit E containing a photograph of a retail store location having Plaintiff's Products on or near other retinol-containing products sold by other companies.

22.     As shown by the above, the attached exhibits, and other facts, the Trademark and Trade Dress are inherently distinctive.

**Plaintiff's Trademark and Trade Dress have acquired secondary meaning**

23.     Plaintiff first used the Trademark and Trade Dress in commerce at least as early as September 30, 2008.

24.     The Trademark and Trade Dress have been used consistently since their introduction.

25.     The Trademark and Trade Dress have been used in the packaging, magazine advertising and coupons for the Plaintiff's Products since 2008.

26.     Plaintiff has expended about $1,000,000.00 on advertising of Plaintiff's Products in the United States featuring the Trademark and Trade Dress.

27.     Plaintiff's Products, using the Trademark and Trade Dress, have enjoyed commercial and critical success.

28.     Plaintiff's Products, using the Trademark and Trade Dress, have generated over $20,000,000.00 in net wholesale sales in the United States since 2008 through the sale of over 3,000,000 units.

29.     In 2009 Plaintiff's Products were being sold in about 2,000 separate retail store locations, websites, and mail order catalogs.  By 2015, Plaintiff's Products were being sold in over 5,000 separate retail store locations, websites, and mail order catalogs.

30.     Plaintiff's Products, using the Trademark and Trade Dress, have been featured in articles or spreads in at least Health, Oprah.com, Ladies' Home Journal, and In Style Magazine.

31.     Because of Plaintiff's exclusive and extensive use and promotion of the Trademark and Trade Dress in connection with the sales of the Plaintiff's Products, the public and the trade recognize products with the Trademark and Trade Dress as emanating from a single source of origin, namely, Plaintiff.

32.     Plaintiff's Trademark and Trade Dress have built and acquired secondary meaning and extensive good will.

**Defendants' Infringing Products**

33.     Defendant Kira Labs manufactures and sells cosmetics and skin care products. Kira Labs further produces private label products for entities believed to be controlled, owned and operated by Defendant Rosen including the Rosen Entities.  Such private label products are sold under brands often presented on the products as being entities themselves, including "Sculpt," "Ganique," "18actives," "Medyskin," and Alluxe Skincare."

34.     Among Kira Labs' products is a line of retinol-containing skin care products, including a retinol-containing beauty oil product and a retinol serum.

35.     Upon information and belief, Kira Labs private labeled its retinol-containing products for Defendant FHB, resulting in the retinol-containing beauty oil product illustrated in Exhibit F and the retinol serum illustrated in Exhibit G. ("Defendants' Products" or "Infringing Products").

36.     As shown in Exhibits F and G, the Infringing Products utilize a color scheme, font and arrangement of elements that mimic and are substantially indistinguishable from the distinctive elements of Plaintiff's Trademark and Trade Dress. These include the use of a maroon/burgundy colored rectangular bar extending horizontally along the top of contrasting white packaging and the prominent use of the word "RETINOL" in all capital letters and block font on the packaging. These further include the use of a maroon/burgundy colored bottle displayed on the packaging which also has the prominent use of the word "RETINOL" in all capital letters and white block font on the maroon/burgundy rectangular bar.

37.     Upon information and belief, Defendants have sold and/or are continuing to sell the Infringing Products through a number of brick and mortar stores, web sites and catalogues including, without limitation, TJ Maxx.

38.     Plaintiff notified Defendants of its rights including in its Trademark and Trade Dress by letter dated November 16, 2015. Defendants have continued selling the Infringing Products after that date despite being so notified.

39.     Upon information and belief, Defendants are willfully and intentionally using the distinctive elements of Plaintiff's Trademark and Trade Dress on the Infringing Products with the purpose and intent of causing consumer confusion.

40.     Defendants are using the distinctive elements of Plaintiff's Trademark and Trade Dress on the Infringing Products without the authorization or consent of Plaintiff.   These

distinctive elements include, without limitation, the use of a rectangular bar having a color substantially similar to the maroon/burgundy bar in Plaintiff's Trademark and Trade Dress extending horizontally along the top of contrasting white packaging and having the prominent use of the word "RETINOL" in all capitals in a block font.

41.     Defendants commenced use of the distinctive elements of Plaintiff's Trademark and Trade Dress on the Infringing Products after Plaintiff built up extensive and valuable business and goodwill in connection with the Trademark and Trade Dress.

42.     Upon information and belief, Defendants' Products are of inferior quality to Plaintiff's Products.

43.     Defendants' actions, including the offer for sale, promotion, and sale of the Infringing Products, have infringed upon and diluted Plaintiff's Trademark and Trade Dress and injured and interfered with Plaintiff's relationships with its suppliers, distributors, and customers.

**Consumers are likely to confuse the Infringing Products with Plaintiff's Products**

44.     The Infringing Products contain packaging and a label which are confusingly similar to and substantially indistinguishable from Plaintiff's Trademark and Trade Dress.

45.     Plaintiff and Defendants are engaged in the business of selling the same type of goods, namely retinol-containing creams and oils, aimed at the same class of customers, and distributed through the same channels of trade.

46.     Plaintiff's Products have a retail price point ranging from $8.00 to $26.00.

47.     The Infringing Products were and are being offered for sale at TJMaxx stores in New York for approximately $6.00.

48.     Plaintiff's Products are sold in discount department stores such as TJ Maxx and Marshall's, beauty stores, and pharmacies, and through websites and mail order catalogues.

49.     The vast majority of sales of Plaintiff's Products in stores are self-service, off the shelf.  Even when Plaintiff's Products are sold in higher-end stores, they are in the self-service section of those stores.  Web based and catalogue sales of Plaintiff's Products are usually done without sales assistance.

50.     Similarly, upon information and belief, the sales of Defendants' Products in stores are generally self-service and off the shelf, and the web based and catalogue sales of Defendants' Products are usually done without sales assistance.

51.     Upon information and belief, Plaintiff's Products and the Infringing Products can be found side-by-side on store shelves.  Exhibit H illustrates side-by-side placements of Plaintiff's Products and some of the Infringing Products on a store shelf.

52.     Plaintiff's Products bearing its Trademark and Trade Dress and Defendant's Products bearing the distinctive elements of Plaintiff's Trademark and Trade Dress have been and continue to be sold in the same stores and/or on the same websites.

53.     For at least these reasons, numerous ordinary prudent consumers are likely to confuse Defendants' Products with Plaintiff's Products.

**<u>Defendants' Misleading Packaging</u>**

54.     Defendants' Products do not identify any of the Defendants as the source of the products.

55.     As shown in Exhibits F and G, Defendants' Products feature the word "Sculpt" on the packaging and state that the products are "Exclusively Manufactured For Sculpt | Newark DE 19713 USA."

56.     Defendants' Products further provide a URL and email address at the domain name of sculptfacebody.com. The website at this URL does not identify any of the Defendants

but gives the clear impression that some entity called "SCULPT" is involved in manufacturing and selling skin care and other cosmetics products and which consumers can contact. Print-outs of screens from Defendants' website are contained in Exhibit I.

57.     Upon information and belief, there is no corporate entity with the word "Sculpt" in its name that is involved with manufacturing, labeling, or selling Defendants' Products.

58.     Upon information and belief, Defendant Rosen is owner and president of two Rosen Entities, Naturalskinshop, Inc. and Mayts, Inc., which share a place of business in Newark, Delaware but are not identified on the packaging for Defendants' Products nor on the Sculpt website identified on the packaging for Defendants' Products.

59.     As a result, Defendants' Products and website contain false and misleading representations of facts about the nature, characteristics, qualities and/or origins of Defendants' Products, which false and misleading representations are likely to influence purchasing decisions of consumers.

60.     Plaintiff has been and is being injured as a result of such false and misleading representations on Defendants' Products and website by direct diversion of sales of Plaintiff's Products and/or by a lessening of goodwill associated with Plaintiff's Products, especially given that Defendants' Products have a packaging that is confusingly similar to Plaintiff's Trademark and Trade Dress and are sold in the same retail establishments such as TJMaxx.

**Defendant Rosen's Liability Including by Piercing the Corporate Veil**

61.     Defendant Rosen owns and operates a number of different corporate entities in the same or similar lines of business, including Defendants Kira Labs and FHB as well as Naturalskinshop Inc. and Mayts. Inc.

62.     Defendant Rosen has obfuscated and continues to obfuscate which entity or entities are involved in the manufacture and sale of Defendants' Products by, among other things:

a.    not properly labeling Defendant's Products as required by FDA regulations with the names of any entities responsible for their manufacture and sale;

b.   labeling Defendants' Products as if they were made or sold by an entity called "Sculpt" which does not exist but appears to be a brand used by or business unit within Defendant Kira Labs and/or Defendant FHB;

c.   labeling other products sold by Rosen Entities as if they were made or sold by one or more other entities such as "Ganique," "18actives," "Medyskin," and Alluxe Skincare" which do not exist but appear to be brands used by or business units within Defendant Kira Labs and/or other Rosen Entities;

d.   identifying Sculpt as being located in Newark, Delaware, where Defendant Rosen owns and operates two additional corporate entities Naturalskinshop, Inc. and Mayts, Inc., even though Defendant Kira Labs is located in Florida;

e.   referring customers of Defendants' Products to a website at the URL www.sculptfacebody.com which continues to identify "Sculpt" as an entity and which does not identify any of Rosen's actual corporate alter egos as the source of the "Sculpt" business; and

f.   apparently selling Defendants' Products through FHB which is not identified on the packaging for Defendants' Products or on the sculptfacebody.com website to which customers are referred.

11

63.     The apparent entity designated "Sculpt" is a sham that serves essentially as an alter ego for Rosen.

64.     The Rosen Entities similarly label and sell one or more other products using names presented as apparent entities called "Ganique," "18actives," "Medyskin," and Alluxe Skincare" which also serve as alter egos for Rosen.

65.     Rosen has created, organized and operated, and continues to operate, the Rosen Entities as mere tools or business conduits to sell misleadingly labeled products including Defendants' Products and to escape liability for the wrongful acts committed by, through or using the Rosen Entities.

66.     Upon information and belief, Rosen has a financial interest in, ownership of and/or control over the Rosen Entities.

67.     One or both of Defendants Kira Labs and FHB are a mere sham and shell that operates as the alter ego for Defendant Rosen. There is such unity among the Rosen Entities given, among other things, the manner in which Defendants obfuscate the source of Defendants' Products, that the separateness of the Rosen Entities and Rosen has ceased and holding only one or more of the Rosen Entities liable and not Rosen himself would result in an injustice.

68.     Rosen created, organized, operated and continues to operate the Rosen Entities including Defendants Kira Labs and FHB to evade responsibility for their wrongful acts including the manufacture and sale of Defendants' Products.

## COUNT I
## Direct Infringement of a Federally Registered Trademark

69.     Plaintiff re-alleges and incorporates by reference the allegations recited in paragraphs 1 through 68 of this Complaint as if fully incorporated herein.

70.     Defendants' activities, as alleged, constitute infringement of Plaintiff's Trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.  In particular, Defendants' offering for sale, sale, distribution and/or advertising of the Infringing Products constitutes use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's Trademark on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

71.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with its registered mark, including diversion of customers from them, lost sales and lost profits, and Defendants have been and will continue to be unjustly enriched.

72.     Plaintiff has no adequate remedy at law.

<u>COUNT II</u>
<u>Contributory Infringement of Trademark and Trade Dress</u>

73.     Plaintiff re-alleges and incorporates by reference the allegations recited in paragraphs 1 through 72 of this Complaint as if fully incorporated herein.

74.     The brick and mortar stores, web sites and catalogues which carry the Infringing Products, including those identified above, are infringing on Plaintiff's Trademark and Trade Dress, in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

75.     Defendants' activities, as alleged, constitute contributory infringement in that Defendants have induced the brick and mortar stores, web sites and catalogues which carry the Infringing Products, including those set forth above identified as selling the Infringing Products, to infringe on Plaintiff's Trademark and Trade Dress, and have continued to supply the

Infringing Products to these establishments knowing or with reason to know these establishments are engaging in trademark infringement.

76.     Defendants have done so by, among other things, providing the Infringing Products to these establishments for sale to the general public after being informed that these products infringe on Plaintiff's Trademark and Trade Dress.

77.     Defendants' contributory infringement is willful, intentional, purposeful and in disregard of the rights of Plaintiff, and is on-going.

<u>**COUNT III**</u>
<u>**Trademark Infringement, False Designation of Origin, False Description,**</u>
<u>**and Unfair Competition**</u>

78.     Plaintiff re-alleges and incorporates by reference the allegations recited in paragraphs 1 through 77 of this Complaint as if fully incorporated herein.

79.     Defendants' activities, as alleged, constitute infringement of Plaintiff's Trademark and false designation of origin, false representation, false description and unfair competition, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill, all in violation of Lanham Act §43(a), 15 U.S.C. §1125(a).

80.     Defendants' activities, as alleged, also constitute contributory infringement and contributory false designation of origin, false representation, false description and unfair competition in that Defendants have intentionally induced the brick and mortar stores, web sites and catalogs which carry the Infringing Products, including those set forth above, to infringe on Plaintiff's Trademark and commit acts of false designation of origin, false representation, false description and unfair competition.

81.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the

goodwill associated with Plaintiff's Trademark, including diversion of customers from Plaintiff, lost sales and lost profits, and Defendants have been and will continue to be unjustly enriched.

82.     Plaintiff has no adequate remedy at law.

**COUNT IV**
**Trade Dress Infringement, False Designation of Origin, False Description**
**and Unfair Competition**

83.     Plaintiff re-alleges and incorporates by reference the allegations recited in the paragraphs 1 through 82 of this Complaint as if fully incorporated herein, including without limitation, the description of the distinctive elements, and the use by and value to Plaintiff, of Plaintiff's Trade Dress as recited in paragraphs 14-33 of this Complaint.

84.     The aforementioned acts of Defendants have caused and will continue to cause a likelihood of confusion in the minds of the trade and the public, and will damage Plaintiff's reputation for exclusivity in connection with the Trade Dress, as well as for quality and reliable merchandise.

85.     Defendants' acts constitute infringement of the Trade Dress and the use of a false designation of origin, a false representation, and unfair competition, by inducing the erroneous belief that the product contained within the Infringing Products is in some manner affiliated with, originate from, or are sponsored by Plaintiff, misrepresents the true nature and origin of the Infringing Products, all in violation of Lanham Act §43(a), 15 U.S.C. §1125(a).

86.     Defendant's acts are willful, intentional, unfair, untrue, and deceptive, and they tend to mislead, deceive and confuse, and will have the result of misleading, deceiving and confusing the public to believe that Defendants and/or the Infringing Products are affiliated with, sponsored or controlled by Plaintiff.  As a consequence, Defendants have traded upon and gained

public acceptance and other benefits from Plaintiff's favorable reputation, which has accordingly been placed at risk by Defendants' improper acts and conduct.

87.     Defendants' activities, as alleged, also constitute contributory infringement and contributory false designation of origin, false representation, false description and unfair competition in that Defendants have intentionally induced the brick and mortar stores, web sites and catalogs which carry the Infringing Products, including those set forth above, to infringe on Plaintiff's Trade Dress and commit acts of false designation of origin, false representation, false description and unfair competition.

88.     Defendants' unlawful actions have interfered with Plaintiff's sales, have unfairly diverted sales to Defendants, and have caused Plaintiff monetary damage.

89.     Defendants have caused irreparable harm and damage to Plaintiff and will continue to cause irreparable harm to Plaintiff, and have caused Plaintiff to suffer monetary damage in an amount thus far not determined.

90.     Plaintiff has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## COUNT VI
## False Advertising

91.     Plaintiff re-alleges and incorporates by reference the allegations recited in the paragraphs 1 through 90 of this Complaint as if fully incorporated herein.

92.     Defendant's unlawful and improper actions as set forth above constitute false or misleading descriptions of fact and/or false or misleading representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, qualities and/or geographic origin of Defendants' products and other commercial activities.

16

93.     Defendants' activities create the false impression and/or are likely to mislead consumers to believe, inter alia, that Defendants' products are affiliated or connected with, or are licensed, sponsored, authorized approved or sanctioned by Plaintiff, thereby misleading the public, all in violation of Lanham Act §43(b), 15 U.S.C. §1125(a)(1)(B).

94.     Defendants' activities of false advertising have materially injured and continue to injure Plaintiff's business, including through diversion of customers from Plaintiff, lost sales and lost profits, and Defendants have been and will continue to be unjustly enriched.

### COUNT VI
### Common Law Trade Dress Infringement and Unfair Competition

95.     Plaintiff re-alleges and incorporates by reference the allegations recited in the paragraphs 1 through 94 of this Complaint as if fully incorporated herein, including the description of the distinctive elements, and the use by and value to Plaintiff, of Plaintiff's Trade Dress as recited in paragraphs 14-33 of this Complaint.

96.     The acts of Defendants infringe the Trade Dress, and constitute trade dress infringement, in violation of the common law of the State of New York.

97.     Defendants misappropriated Plaintiff's Trade Dress, took advantage and made use of Plaintiff's efforts and good will, and have otherwise unfairly competed with Plaintiff, in violation of the common law of the State of New York.

98.     Defendants intentionally and willfully infringed and misappropriated Plaintiff's Trade Dress, took advantage and made use of Plaintiff's efforts and good will, and otherwise unfairly competed with Plaintiff with the intent of causing confusion, mistake and deception as to the source of the Infringing Products, and with the intent to palm-off Defendants' Products as those of Plaintiff.  As such, Defendants have committed unfair competition in violation of the common law of the State of New York.

99.     The foregoing acts of Defendants have injured and will continue to injure Plaintiff by depriving it of sales of Plaintiff's Products, by injuring its business reputation, and by passing off Defendants' Infringing Products contained therein as Plaintiff's Products, all in violation of the common law of the State of New York.

100.    Defendants' acts of common law trade dress infringement and unfair competition have caused irreparable harm and damage to Plaintiff and have caused Plaintiff monetary damage in an amount thus far not determined, for which Plaintiff is entitled to its actual damages, Defendants' profits, punitive damages, and attorneys' fees and costs.

101.    Plaintiff has no adequate remedy at law.

### TRIAL BY JURY DEMANDED

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A.      That Defendants' conduct willfully infringes the Trademark and Trade Dress, falsely designates the origin of Defendants' Products contained therein, falsely describes such products and unfairly competes with Plaintiff, in violation of Lanham Act §32, 15 U.S.C. §1114, Lanham Act §43(a), 15 U.S.C. §1125, and the common law of the State of New York.

B.      That an injunction be issued restraining Defendants and its agents, officers, directors, servants, employees, their successors and assigns, and all others in active concert or participation including the Rosen Entities preliminary and permanently from directly or indirectly:

i.      Using the Trademark or Trade Dress, or any trade dresses, marks, or labels which are similar to or are colorable imitations of the Trademark or Trade Dress, alone or as a part of, or together with any other designs, artwork, word or words, trademark, service mark, trade name, trade dress or other business or commercial

designation or any logo, symbol or design in conjunction with the sale, offering for sale, advertising, distributing or promoting of Defendants' Products or any skin care products related thereto;

ii.   Representing by words or conduct that the Infringing Products are authorized, licensed, sponsored by, endorsed by, or otherwise connected with Plaintiff;

iii.   Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done, amounts to trademark or trade dress infringement, false designation of origin, false description or false representation of the Trademark or Trade Dress, whereby wholesalers, retailers and/or consumers of such products are deceived into believing that Defendants' Products, or the products contained therein, emanate from Plaintiff or from a company that is sponsored, authorized, or endorsed by Plaintiff;

iv.   Taking any action that is likely to put others in a position to sell or palm-off the products of Defendants as the products of Plaintiff or to unfairly compete with Plaintiff; and

v.   Otherwise unfairly competing with Plaintiff or committing infringement of Plaintiff rights.

C.   That the Court issue an Order directing Defendants:

i.   To immediately deliver to Plaintiff, under oath and for destruction, all packaging, boxes, and/or containers, which are similar to and/or a colorable imitation of the Trademark or Trade Dress, in the possession, custody, or control of Defendants;

ii.   To immediately deliver to Plaintiff, under oath and for destructions, all advertisements, promotional materials, printing devices, catalogs, and/or all of the

things that contain images of packaging which are similar to and/or a colorable imitation of the Trademark or Trade Dress, in the possession, custody, or control of Defendants;

    iii.    To file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants has complied with the injunction.

D.    That the Court award judgment in favor of Plaintiff for the damages sustained by Plaintiff and the profits made by Defendants as a result of Defendants' wrongful conduct.

E.    That the Court award judgment in favor of Plaintiff in the amount of statutory damages pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. §1117(c).

F.    That the Court award judgment in favor of Plaintiff in the amount of treble damages and prejudgment interest pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117.

G.    That the Court award compensatory and punitive damages to Plaintiff in an amount to be determined.

H.    That the Court award judgment against Defendants for the full costs of this action, including reasonable attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117.

I.    That the Court hold Defendant Rosen personally liable for the damages and wrongful conduct complained of herein.

J.    That the Court require a full and complete accounting of all monies received by Defendants as a result of the manufacture, sale, advertising, and distribution of the Infringing Products, together with an order transferring to Plaintiff any amount found to be due to it.

K.      For interest on all amounts found to be due to Plaintiff from Defendants, at the prevailing rate, from the date said amounts or any part thereof became or becomes due.

L.      That the Court require Defendants to notify their commercial associates, suppliers and customers, including manufacturers, wholesalers and retailers of said order.

M.      That the Court order such other, further, and different relief as the nature of this action may require and that the Court may deem just and proper.

N.      That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

Dated: February 5, 2016                    Respectfully submitted,


                                           By: ___*Seth H. Ostrow*_____


                                           Seth H. Ostrow
                                           sho@msf-law.com
                                           George D. Zalepa
                                           gdz@msf-law.com

                                           MEISTER SEELIG & FEIN LLP
                                           125 Park Avenue, 7th Floor
                                           New York, NY 10017
                                           Telephone: (212) 655-3500
                                           Facsimile: (212) 655-3536

                                           *Attorney for Plaintiff*